**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| St. Jude Medical Center Incorporated, | No. CV-16-04462-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Allstate Energy Incorporated, | |
| Defendant. | |

Defendant Allstate Energy Inc. worked on an electrical panel at a manufacturing facility owned by Plaintiff St. Jude Medical Center Inc. A little over one week after that work was completed, there was a fire in the electrical panel. St. Jude hired a third-party to clean up the area and, contrary to St. Jude's instructions, that third-party removed material from the electrical panel. St. Jude later filed the present case against Allstate, alleging Allstate could have prevented the fire. Allstate now seeks summary judgment claiming the third-party's actions mean St. Jude lacks sufficient evidence to support its claims or, alternatively, the third-party's actions constituted spoliation of evidence such that St. Jude should not be permitted to pursue its claims.

**BACKGROUND**

The relevant facts are undisputed. On December 30, 2014, Allstate installed a new circuit-breaker subpanel at St. Jude's manufacturing facility. That subpanel provided power to vacuum pumps. In doing so, Allstate drilled a hole into a main electrical panel and ran wiring between the main panel and the new subpanel. (Doc. 77 at 2). After

Allstate completed that connection, "the vacuum pumps went on line and St. Jude operated them on a 24/7 basis." (Doc. 77 at 2).

On January 8, 2015—just over one week after Allstate completed its work—a fire broke out in the main panel. The Scottsdale Fire Department used fire extinguishers and water to extinguish the fire. After doing so, the Fire Department took photographs of the main panel. Those photographs show severe damage to the main panel but "many of the damaged interior parts of the [main] panel were still in place." (Doc. 77 at 2). St. Jude hired American Technologies, Inc. ("ATI") to clean up the fire-damaged area.

On January 9, 2015, a number of St. Jude employees met with ATI employees regarding the cleanup. During that meeting, St. Jude's employees "specifically informed ATI . . . of the need to preserve the [main panel] where the fire had started." (Doc. 77 at 23). St. Jude and ATI agreed the main panel would be marked with caution tape and ATI would not touch the main panel during the cleanup. Someone marked the main panel with caution tape by using the tape to place an "X" over the front of the main panel. During the cleanup, however, an ATI employee removed material from inside the main panel. Some, but not all, of the removed material was placed in a bag or box and kept onsite. It is undisputed that some of the main panel's contents were removed and never found. (Doc. 77 at 7).

St. Jude hired an expert, William R. Haack, to determine the cause of the fire. Haack visited the site on January 12, 2015, after ATI had removed the contents of the main panel. (Doc. 77-2 at 82). Haack was able to examine the site, review photographs taken by the Fire Department, and examine the contents of the main panel that had not been removed. Based on his review of the available evidence, Haack concluded there was only one possible cause of the fire: "a high-resistance connection between the vertical busses and one or more circuit breakers" in the main panel. (Doc. 70-2 at 17). St. Jude has not provided an explanation of this statement in layman's terms. But it is undisputed Allstate did not cause the fire in an obvious way, such as through Allstate leaving debris in the main panel or leaving a loose connection. Instead, Haack concluded

it was inaction by Allstate that rendered it responsible for the fire.

According to Haack, the fire was caused by Allstate's failure "to conduct or recommend testing of the [main] panel in accordance with accepted industry practice standards." If Allstate had performed those tests, it "would have identified the high-resistance connection in the [main] panel." (Doc. 77 at 11). And if Allstate had identified that connection, it could have advised St. Jude to take remedial measures that would have prevented the fire. (Doc. 77 at 11).

During his deposition, Haack was asked about the testing he believed Allstate should have performed. Haack described two types of testing Allstate should have performed: infrared and connectivity testing. Haack stated infrared testing could have been conducted while the main panel was in use but he admitted such testing might not have indicated a troublesome connection. (Doc. 77 at 11). Connectivity testing, on the other hand, would have required the panel be "de-energized" for two days but would have located the connection. (Doc. 77 at 12, 15). Thus, according to Haack, Allstate was guaranteed to locate the problem only if St. Jude had agreed to shut down the main panel for two days, which would have required a portion of the facility be out of operation for those two days.[1]

Haack addressed the impact of ATI's actions in a declaration submitted in response to Allstate's summary judgment motion. In that declaration, Haack states "[i]deally, the post-fire . . . debris should have been systematically collected by forensic engineers." But "due to the intensity of the fire, firefighting activities and the significant post-fire 'overhaul', it [was his] professional opinion that the removal of the post-fire . . . debris did not materially alter the ability to determine the area of origin and cause of the fire in this case." (Doc. 77-2 at 82). In other words, Haack does not believe ATI's actions had a material impact on determining the cause of the fire or the fact that Allstate

---

[1] St. Jude submitted a declaration from an employee stating the manufacturing facility had been shut down from December 20, 2014 until January 3, 2015. Because Allstate finished its work on December 30, 2014, it allegedly could have performed connectivity testing after the installation work was complete and prior to January 3, 2015. (Doc. 77-2 at 98).

- 3 -

would have prevented the fire through proper testing.

Allstate retained its own expert to address the cause of the fire. That expert, George Hogge, believes "[t]he removal and loss of the most important components of [the main panel]" mean "the exact cause of this failure cannot be determined." (Doc. 77-2 at 107). Despite that opinion, Hogge believes "[t]he most likely cause" of the fire was "resistance heating in the bus to circuit breaker adaptor connections" as a result of a manufacturing defect in the main panel or "thermal damage" to the main panel from an unrelated incident. (Doc. 77-2 at 107). Hogge believes ATI's removal of the main panel components made it impossible to identify with sufficient specificity where the fire originated. Therefore, it is impossible, in Hogge's view, "to determine whether any testing before the fire would have revealed a high-resistance connection or other flaw in the components of the panel or their connections." In other words, "if you don't know what specifically caused the fire, you cannot reasonably know whether testing would have revealed that case." (Doc. 70-9 at 3).

## ANALYSIS

St. Jude asserted two claims when it filed this suit: breach of contract and negligence. According to the complaint, the breach of contract claim is based on Allstate's failure "to perform the work expected in a workmanship [sic] like manner, acceptable within the industry standard." (Doc. 1 at 3). The negligence claim is based on a breach of Allstate's "duty to perform the installation . . . within the standard of care for work in its industry." (Doc. 1 at 4). Allstate now seeks summary judgment on both claims but its arguments do not differentiate between them. St. Jude's response also fails to differentiate between the claims. Thus, the parties appear to assume the claims are functionally identical. The Court will assume the same.

Allstate seeks summary judgment on both claims "based on . . . the lack of evidence to support St. Jude's . . . claims and as a sanction for the spoliation." (Doc. 69 at 1). On the first argument, Allstate contends ATI's spoliation of the main panel means St. Jude is unable to present "a prima facie case that testing would have revealed the flaw

that later caused the fire." That is, the spoliation allegedly "made it impossible to determine whether any testing before the fire would have revealed" the problem that led to the fire. On the second argument, Allstate concedes St. Jude did not act in bad faith but Allstate contends the destruction of "the very item that is at issue in the case" means a sanction of dismissal is appropriate. (Doc. 69 at 12).

**I. St. Jude Has Sufficient Evidence Without the Main Panel**

Allstate's first argument is that the spoliation of the main panel means St. Jude lacks sufficient evidence to prove either of its claims. *See Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (summary judgment appropriate when "the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial"). Allstate argues both of St. Jude's claims depend on there being evidence that "testing would have revealed the flaw that later caused the fire." And Allstate believes there is no such evidence because it is not possible to know whether "testing would have discovered the high-resistance connection" that caused the fire. Destruction of the main panel allegedly "has prevented anyone from determining what caused the fire or what particular components were involved." (Doc. 69 at 13). The flaw in Allstate's argument is that it is in direct conflict with the report by Haack, St. Jude's expert.

According to Haack's report, Allstate had an obligation to perform "industry standard acceptance tests" when it performed its work on December 30, 2014. (Doc. 70-2 at 17). Haack believes that if Allstate had performed those tests, the cause of the fire "would have been identified and if corrected," the fire would not have occurred. Allstate has not directly attacked Haack's qualifications or methodologies. Instead, Allstate merely argues "Haack's opinion is contradictory and illogical" because, in Allstate's view, Haack "does not know what caused the fire" and therefore he cannot support his position that "had testing been done before the fire, it would have revealed this unknown cause." (Doc. 69 at 13). This is a misreading of Haack's opinions.

After reviewing the available evidence, Haack assessed and rejected a number of

possible causes of the fire. After rejecting four alternatives, Haack determined "[t]he only remaining candidate cause" of the fire was a "high-resistance connection between the vertical busses and one or more circuit breakers." (Doc. 70-2 at 17). Therefore, Haack concluded that must have been the cause of the fire. Once he reached that conclusion, Haack then determined Allstate would have identified the problem and prevented the fire if it had performed the tests required by the standard of care, *i.e.*, infrared and connectivity testing.

Allstate does not offer any meaningful explanation why, viewed in the light most favorable to St. Jude, Haack's opinions are insufficient to establish testing would have revealed the problem. While Allstate disagrees with Haack regarding the cause of the fire, it is not accurate to claim Haack "does not know what caused the fire." Haack claims to know the cause of the fire. Rather than challenge Haack's qualifications or opinions, Allstate asks the Court to simply ignore his testimony altogether.[2] The Court cannot do so. At summary judgment the Court "may not engage in [c]redibility determinations or the weighing of evidence, as those are functions reserved for the jury." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017). Accepting Haack's opinions, Allstate's first argument for summary judgment must be rejected.

**II. Dismissal Is Not Appropriate Based on Loss of the Main Panel**

Allstate's second argument is the Court should exercise its inherent powers to dismiss the case based on the spoliation of the main panel. Allstate admits "the general rule in the 9th Circuit is that willfulness, fault, or bad faith is required to justify a

---

[2] The Court has an obligation "to act as a gatekeeper to exclude junk science that does not meet Federal Rule of Evidence 702's reliability standards." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014). But a party waives objections to expert testimony by failing to raise the issue. *See Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1113 (9th Cir. 2012) ("Failure to raise a *Daubert* challenge at trial causes a party to waive the right to raise objections to the substance of expert testimony post-trial."). Allstate has not objected to Haack's testimony and the Court will not sua sponte exclude that testimony. *See Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) ("[T]he district court abused its discretion by excluding some evidence even though Sysco had waived any objection.").

dismissal sanction for spoliation." (Doc. 78 at 6). Allstate seems to admit St. Jude's actions do not meet that requirement.[3] But Allstate argues there is "an exception to the general rule" that allows for "dismissal sanctions . . . when a party has destroyed the very item at issue in the lawsuit." (Doc. 78 at 6). There is such an exception but determining whether it applies to the present facts presents a close call.

Two cases involving the loss of crucial evidence are instructive. The first case is a Ninth Circuit case from 1992. In *Unigard Security Insurance Company v. Lakewood Engineering & Manufacturing Corporation*, 982 F.2d 363 (9th Cir. 1992), a fire damaged a yacht. The local fire department investigated the fire and concluded it had been caused by "a short in the yacht's wiring." *Id.* at 365. The insurer of the boat, however, concluded the fire had been caused by "a portable electric space heater" that had been on the yacht. *Id.* The space heater, manufactured by Lakewood Engineering, had a warning label on its bottom that could not be seen when the heater was in service. After determining the heater caused the fire, the insurance company spoke with "two legal specialists" regarding the possibility of a subrogation claim against Lakewood. *Id.* Believing "the warning label was sufficient" to prevent any liability, the legal specialists convinced the insurer "a subrogation claim was unavailable." *Id.* The insurer then "authorized disposing of the heater and selling [the yacht] for its salvage value." *Id.*

---

[3] Allstate does argue "St. Jude's facilities manager admitted that the need to preserve the parts inside the panel was not properly communicated to ATI." (Doc. 69 at 3). In support of this, Allstate cites the deposition of a St. Jude employee. But that deposition testimony is not clear. The employee was asked if "the communication, as far as the need to preserve [the main panel] had . . . been properly delineated to whoever did the work." (Doc. 70-1 at 12). The employee responded "It appears not, based on what had transpired." (Doc. 70-1 at 12). That testimony can be interpreted as the St. Jude employee believing the need to preserve the panel was not properly transmitted by ATI to its workers. Whether the need to preserve the panel was properly transmitted by St. Jude to ATI is a separate issue. And on that issue, the St. Jude employee submitted a declaration stating she met with "representatives from ATI" and she "specifically discussed the need to preserve the electrical panel." The ATI representatives told her "the use of 'caution' tape to mark the electrical panel would be sufficient to identify the electrical panel, and the ATI representatives stated that they would not disturb the electrical panel at all." (Doc. 77-2 at 97).

Two years later, the insurer consulted with new counsel and that counsel determined there was a viable subrogation claim against Lakewood based on the warning label being insufficient. The insurer then sued Lakewood and Lakewood sought sanctions against the insurer for spoliation of evidence. *Id.* Lakewood argued it could not determine the cause of the fire without access to the heater and the yacht and the insurer should not have disposed of that evidence. The district court agreed with Lakewood and excluded the insurer's "expert testimony and other evidence from the boat and heater." *Id.* at 367. Without that evidence, the insurer admitted it did not have sufficient evidence to prove its case. Therefore, judgment was entered against the insurer.

On appeal, the Ninth Circuit believed the exclusion of the evidence was a proper exercise of the district court's inherent powers. "[A] district court's inherent powers [include] the broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial. Within this discretion lies the power . . . to exclude testimony of witnesses whose use at trial . . . would unfairly prejudice an opposing party." *Id.* at 368. The district court had concluded the insurer's "destruction of key evidence render[ed] a full defense impossible." *Id.* at 368. That finding "provide[d] ample support for the court's discretionary conclusion that allowing [the insurer] to introduce the testimony of its experts would unfairly prejudice Lakewood and . . . preclude the court's ability to conduct a fair trial." *Id.*

In making its ruling, the Ninth Circuit noted two Supreme Court cases could "be read to preclude a court's inherent power to sanction a party in the absence of bad faith." *Id.* at n.2. But the Ninth Circuit concluded the "bad-faith requirement" likely only applied to "sanctions in the form of cost- and fee-shifting." *Id.* And the Ninth Circuit noted previous decisions allowed inherent powers sanctions "not only for bad faith, but also for willfulness or fault by the offending party." *Id.* The Ninth Circuit concluded, without elaboration, the insurer's "fault" was "manifest in the record." *Id.*

The second case involving the loss of crucial evidence is *State Farm Fire and*

*Casualty Company v. Broan Manufacturing Company, Inc.*, 523 F. Supp. 2d 992 (D. Ariz. 2007). In that case, there had been a fire at a residence on April 17, 2005. The insurer of that residence had expert visit the scene and they determined the fire had been caused by an exhaust fan. On May 13, 2005, the insurer told the homeowners "they could begin repairs to the fire scene." *Id.* It was not until June 13, 2005, that the insurer contacted the manufacturer of the exhaust fan, Broan Manufaucturing. In its letter to Broan, the insurer said the scene was available for an inspection. But, "[b]y that point . . . repairs had already begun and the fire scene had not been preserved." *Id.* When the insurer brought suit against Broan for causing the fire, Broan sought dismissal of all claims based on spoliation of the fire scene.

When assessing whether dismissal was merited, the court first observed it was undisputed "the fire scene should have been preserved" and the insurer had "violated its obligation to preserve evidence" by authorizing the repairs before telling Broan about the fire. *Id.* at 996. Next, the court noted the insurer was a "sophisticated litigant aware of its obligation to preserve relevant evidence." *Id.* at 996. And the insurer was also "fully aware that the fire scene would be the central focus of the litigation." *Id.* Despite that knowledge, the insurer had authorized the homeowner to begin repairs before Broan even knew of the fire. Those circumstances were sufficient to qualify as "willful spoliation." Finally, the court determined spoliation of the fire scene "obscured the factual predicate of the case," materially prejudiced Broan's ability to defend the suit, and no less drastic sanctions would remedy loss of the fire scene. *Id.* at 997-98. Accordingly, dismissal of the claims was merited.

Returning to the present case, Allstate believes the actions by ATI are equivalent to the actions by the insurers in *Unigard* and *State Farm* in that all three involved spoliation of the most crucial piece of evidence. Allstate contends "dismissal sanctions can be appropriate when a party has destroyed the very item at issue in the lawsuit and thereby caused significant prejudice to the opposing party." (Doc. 78 at 6). The problem for Allstate is that St. Jude's actions are significantly less culpable than the insurers'

actions in *Unigard* and *State Farm*. In both of those cases, the insurer made a knowing decision to not retain the evidence. In *Unigard*, the insurer "authorized disposing of the heater and selling [the yacht] for its salvage value." 982 F.2d at 365. In *State Farm*, the insurer "advised [the homeowners] that they could proceed with repairs," knowing that doing so would destroy the crucial evidence. 523 F. Supp. 2d at 996. Here, St. Jude explicitly told ATI *not* to touch the crucial evidence and even marked the main panel with caution tape. Allstate has not cited any authority where a court exercised its inherent powers to dismiss claims after a party took all reasonable efforts to prevent destruction but the evidence was lost anyway.

In addition to the lower quantum of fault, the present case also differs from *Unigard* and *State Farm* in that spoliation occurred before either side could take examine the main panel. The insurers in *Unigard* and *State Farm* had access to the evidence before it was lost. That access gave the insurers and their experts a significant advantage over the defendants. Here, however, the main panel components were lost prior to either side's expert examining the scene. Thus, the experts had access to the same evidence and there in no unequal playing field should the case proceed to trial.

Finally, dismissal sanctions are not merited because St. Jude's expert has opined that the destruction of the main panel did not have a material impact on his ability to form his opinions. In fact, even Allstate's expert was able to arrive at an opinion regarding the cause of the fire. (Allstate's expert could not determine "the exact cause" of the fire but he believed the "most likely" cause was "resistance heating in the bus to circuit breaker." (Doc. 77-2 at 107).) Dismissal sanctions are not merited where both experts had access to the same evidence and were able to draw conclusions based on that evidence. Dismissal sanctions would be disproportionate in such circumstances.

While dismissal sanctions are not appropriate, some form of lesser sanctions may be merited. Allstate has explicitly stated, however, it is not seeking lesser sanctions at this time. (Doc. 69 at 6) (noting "adverse-inference jury instruction" is not being requested). Therefore, the Court need not address what alternative sanctions might be

appropriate.

Accordingly,

**IT IS ORDERED** the Motion for Summary Judgment (Doc. 69) is **DENIED**.

**IT IS FURTHER ORDERED** all Motions in Limine are due **August 3, 2018**. Responses are due ten days afterward. No replies are permitted unless ordered by the Court. Prior to filing any Motion in Limine, the parties must confer and discuss the contents of each planned motion. No Motion in Limine should be filed if the other party does not oppose the relief requested.

**IT IS FURTHER ORDERED** the Joint Proposed Pretrial Order, if not already filed, is due **August 3, 2018**.

**IT IS FURTHER ORDERED** the parties shall review the Court's standard Juror Questionnaire (available on the Court's website) and submit **NO MORE THAN FIVE PROPOSED QUESTIONS EACH** to be added to the standard Juror Questionnaire with the Court's approval no later than **August 3, 2018**. Each proposed question shall stand alone and shall not contain sub-parts.

**IT IS FURTHER ORDERED** the parties shall submit a Joint Statement of the Case, of no more than a few short sentences for the Juror Questionnaire, no later than **August 3, 2018**.

**IT IS FURTHER ORDERED** the parties shall submit a second Joint Statement of the Case, of no more than two short paragraphs to be read to the jury, no later than **August 3, 2018**.

**IT IS FURTHER ORDERED** no later than **August 3, 2018**, the parties shall file and submit via email (silver_chambers@azd.uscourts.gov) in Word format proposed Jury Instructions in compliance with the procedures available on the Court's website, including but not limited to: 1) a *joint* set of proposed jury instructions where the parties' instructions agree; 2) a separate set of instructions (one for each party) where the parties do not agree; and 3) legal authority supporting all proposed instructions whether the parties agree or not. Where the parties do not agree, the opposing party shall clearly state

its objection to the proposed instruction and the proposing party shall clearly state its response.

**IT IS FURTHER ORDERED** the parties will jointly file a proposed form of verdict, or if the parties do not agree, they may separately file proposed forms of verdict no later than **August 3, 2018**.

**IT IS FURTHER ORDERED** no later than **August 3, 2018**, the parties shall deliver to chambers excerpts of the deposition testimony they propose to present at trial, in compliance with the procedures available on the Court's website (found in Deposition Designation Procedure for Judge Silver), including but not limited to: Plaintiffs highlighting in yellow the portions they wish to offer and Defendants highlighting in blue those portions they wish to offer. If either party objects to the proposed testimony, a specific and concise objection (e.g., "Relevance, Rule 402") shall be placed in the margin adjacent to the proposed testimony.

**IT IS FURTHER ORDERED** the Final Pretrial Conference and trial date will be set upon review of the parties' pretrial filings.

**IT IS FURTHER ORDERED** the parties shall comply with the Exhibit Procedures found on the Court's website at www.azd.uscourts.gov / Judges' Information / Orders, Forms & Procedures for Hon. Roslyn O. Silver.

Dated this 29th day of June, 2018.

Honorable Roslyn O. Silver
Senior United States District Judge